People of the State of Illinois for use of Salvatore DeCola et al., Appellees, v. Maryland Casualty Company, Appellant.

Gen. No. 41,645.

Heard in the second division of this court for the first district at the April term, 1941. Opinion filed March 24, 1942.

LOUIS B. SIMON and LEON LECOUR DROLET, both of Chicago, for appellant.

WILLIAM C. GREATMAN, of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

The beneficial plaintiffs, Salvatore DeCola, Rose DeCola and Marie Paul, children and heirs at law of Fred S. DeCola, deceased, brought suit against defendant as surety on the bond of Carl Laurie, administrator *de bonis non* of their father's estate, for damages alleged to have been sustained through Laurie's derelictions in administering decedent's estate. Trial by jury resulted in a verdict and judgment in favor of plaintiffs for $4,000 and costs, from which defendant appeals.

From the pleadings and evidence adduced upon trial it appears that August 12, 1926 Fred S. DeCola died intestate, leaving him surviving his widow and the three plaintiff children as his sole heirs at law. Dominic H. Valens was appointed administrator February 10, 1927. He at once qualified by furnishing bond for $20,000 with United States Fidelity & Guaranty Company as surety. Deceased had been engaged in business as a funeral director on West Grand Avenue, Chicago. After his death numerous claims were lodged against his estate. In September 1928 no inventory having been filed by the administrator, a citation and attachment was issued against him. Thereafter in January 1929 he filed an inventory and appraisement and was ruled to present his final account before April 5, 1929. Having failed to comply with this rule, numerous citations and attachments were thereafter issued and his letters of administration were finally revoked October 9, 1930 and he was ordered to file his final account. November 10, 1930 Laurie was appointed as administrator *de bonis non,* and his bond of $7,000 signed by defendant, Maryland Casualty Company, as surety, was approved. William B. Henry was retained as his attorney to represent him in the administration of the estate.

During his regime as administrator Valens had not collected the accounts which constituted the principal assets of the estate nor made any appreciable effort to do so. Many of these accounts had become barred by the statute of limitations and others were desperate or of extremely doubtful value. Without the formality of a court order Valens had sold the furniture and fixtures of the funeral business and was charged generally with dereliction of his duties. When he ultimately filed his final account pursuant to the order of the probate court, plaintiffs interposed objections thereto, some of which were sustained, others overruled, and Valens was ordered to pay into

the estate $1,246 for and on account of his liability. He perfected an appeal from this order to the circuit court, where pursuant to hearing in 1937 he was ordered to pay the estate $1,005, or upon his failure so to do, United States Fidelity & Guaranty Company, the surety on his bond, was ordered to pay that sum to Laurie, the administrator *de bonis non* of the estate. The surety paid the judgment July 28, 1937, and it was satisfied on the record of the circuit court by the administrator *de bonis non*.

Thereafter plaintiffs brought suit in the superior court against the United States Fidelity & Guaranty Company for claimed derelictions of the administrator Valens. The allegations of the complaint were substantially the same as the subject matter of the objections which plaintiffs had filed to Valens' final account. The surety company moved to strike the complaint and dismiss the suit on the twofold ground (1) that the matters involved had been adjudicated by the probate and circuit courts, and also (2) because it had been released from all liability. The motion to strike was sustained by the superior court and the suit was accordingly dismissed. On appeal to the Appellate Court (*People ex rel. DeCola v. United States Fidelity & Guaranty Co.*, 306 Ill. App. 518, wherein the opinion was filed October 1, 1940), the order or judgment of the superior court was affirmed and both defenses interposed in the motion to strike the complaint were specifically approved. Plaintiff's counsel there contended that before the doctrine of *res judicata* can be interposed as a bar there must be identity of parties in the two actions, and the issues and the relief sought must be identical. But the court applied the doctrine in a broader sense and held that it is also binding upon the privies, upon the original parties and other persons who are estopped because they were represented in the first action; that the doctrine applies not only to the issues actually in-

volved and determined in the first suit, but extends to every other matter which might have been raised and determined; and the court pointed out another equally well-established rule of law, namely, that a prior judgment is a bar to a subsequent suit, even if the issues and the relief sought were not identical, where a material fact in litigation has been determined. (See opinion and cases cited therein.) By way of conclusion the court said in that case that plaintiffs were seeking to recover for the same derelictions of Valens as were involved when they filed their objections to his final report in the probate court, and the property they sought to have the administrator account for included the same property they sought to recover in the subsequent suit; that all these questions had been properly raised and determined by the probate and circuit courts, and in these circumstances the judgment of the circuit court was *res judicata* of all matters involved in the suit against the surety company.

William B. Henry, who had been retained by the widow to procure the removal of the original administrator, testified that Valens could not be found for a long time after Laurie's appointment, although diligent efforts were made to discover his whereabouts, and accordingly Henry filed a petition in the probate court setting forth the efforts he had made to find Valens, seeking an order for his removal. Such an order was entered, and November 10, 1930 Laurie was appointed administrator *de bonis non*. Henry was then retained to represent the new administrator. He obtained from the widow a number of loose-leaf ledger sheets which appeared to be the accounts receivable of deceased, and sent letters to all persons who seemed to be indebted to deceased. Later he wrote follow-up letters to the debtors and Laurie personally called on many of them. Finally Henry delegated a young lawyer from his office to contact the debtors, all without avail. The persons interviewed either claimed

that they had paid their bills to Valens, or that they did not owe the money, or, as Henry testified, they slammed the door when the collector called. After his appointment as attorney Henry visited the former undertaking parlor with the widow. It had been closed as a business, but he examined the equipment, which consisted of two or three wicker upholstered settees, several chairs, a table and lamp in the reception room and some embalming instruments and folding chairs in the rear. A neighboring real estate man showed him a bill of sale of these chattels executed by Valens, which had been sold for something like $50. Henry said that he had contemplated filing suits for the recovery of money due but had difficulty in finding witnesses who would be able satisfactorily to prove the claims, and he testified that he had consulted Judge HENRY HORNER about starting suit against Valens on his bond, but no funds being then available, Judge HORNER withheld his approval of the plan. The only other assets in the estate were some cemetery lots, which Henry testified were "practically unsalable." He advertised these lots for sale and was waiting for an opportunity to dispose of them when Miss Phyllis Kelley, assistant to Judge HORNER, insisted that the estate be closed as insolvent. Accordingly he prepared a petition which was served on all the heirs, creditors and others interested, advising them that the estate was about to be closed. Gustave E. Riedl, who represented plaintiffs, then advised Henry that he intended to sue the United States Fidelity & Guaranty Company on Valens' bond, and following this telephone conversation Riedl visited Henry's office, where the latter gave him such information as he had acquired about the assets of the estate and the efforts that had been made by him to realize on them. Subsequently the cemetery lots were sold and Henry received from the United States Fidelity & Guaranty Company a check for $1,005, which was paid pursuant

to the order of the circuit court, with which Laurie, on advice of his attorney, paid the costs of administration, attorney's fees to Riedl, premium on bonds, bills for advertising the cemetery lots and for transferring them to the purchaser, and an item of $100 fees to Henry as attorney for Laurie. The balance was paid to the widow on account of her award. Laurie's petition for closing the estate having been filed, he procured through Mr. Riedl a waiver of notice and consent from the widow and the three plaintiffs wherein they entered their appearance, waived notice of the closing of the estate, and consented "to any and all orders of said Court, approving the final report and account filed herein and for the discharge of Carl Laurie, Administrator *de bonis non,* of the Estate of the said Fred S. DeCola, deceased." In pursuance of this petition an order was entered in the probate court February 3, 1938 declaring the estate to be insolvent, ordering Laurie to turn over and deliver to the widow all the residue and remainder of the personal property and assets remaining in the estate, that Laurie be discharged from further duties, obligations and liabilities as administrator *de bonis non* after paying the costs and expenses incurred, as set forth in the petition (except that $60 for administrator's fees was disallowed), and ordering him to file the vouchers covering expenses and receipts from the widow and others showing payments made. No objections having been filed to the petition nor to the order entered pursuant thereto either by plaintiffs or any other person, the probate court February 1, 1939 entered an order finding that Laurie's vouchers had been filed, and he was accordingly discharged. The suit at bar for damages on account of the alleged derelictions of the administrator *de bonis non* was filed by plaintiffs July 28, 1939.

The charges against the administrator *de bonis non* as shown by the complaint may be summarized as

follows: That it was Laurie's duty to ascertain the whereabouts of Valens and to enforce collection from him for and on behalf of decedent's estate of any and all assets belonging thereto which came or may have come into Valens' hands during the time that he acted as administrator, and to collect and corral all the assets belonging to the estate in the hands of other persons, but that Laurie "in total disregard of his duties in this behalf, wholly failed and neglected and refused to perform his duties"; that during all the time that Laurie was acting as administrator *de bonis non* he utterly failed to locate Valens and either obtain from him any of the assets belonging to the estate which came into Valens' hands while he was acting as administrator, or to compel Valens to account to him; that he failed to file annual reports, as required, over a period of several years, or to present an inventory or a final report and account; that there were certain accounts receivable arising out of deceased's business which were in excess of $10,000 which Laurie, contrary to his duty, "wholly neglected, failed and refused to collect" either from Valens or during the time that he acted as administrator *de bonis non;* that Laurie failed to take the necessary steps to recover the furniture and fixtures contained in the undertaking establishment from the vendees to whom it had been sold by Valens for an inadequate price without leave or authority of the probate court.

Defendant contends that the subject matter of all of the complaints lodged against it were adjudicated by the probate court at the time that Valens filed his final report and account, when the court passed upon objections interposed by the same parties who are plaintiffs in this proceeding. The record supports this contention. After Valens had finally submitted his final report and account, plaintiffs filed objections thereto, following which a hearing was had in the probate court and an order entered which found that

Valens "was guilty of negligence and long delay in collecting and corralling certain of the assets of the . . . Estate . . . listed in the inventory heretofore filed . . . herein, . . . and that by the use of proper diligence and care the said Dominic H. Valens, Administrator herein, could have collected certain of the assets of the said Estate . . . and that by virtue of, and by reason of, the negligence and mismanagement of the said Dominic H. Valens, Administrator herein, the said Dominic H. Valens, neglected and failed to collect or corral certain of the assets of the said Estate of Fred S. DeCola, deceased, especially certain accounts receivable listed as assets . . . in the inventory heretofore filed . . . by the said . . . Administrator herein," and the probate court ordered and directed Valens to pay Laurie, as administrator *de bonis non,* the sum of $1,246 on account of the liability which Valens had incurred to the estate. This sum was subsequently modified on appeal to the circuit court to $1,005, which the surety on Valens' bond paid to Laurie, thus satisfying the judgment of record in the circuit court. With respect to the furnishings of the undertaking establishment, the record shows that although objections had been filed by plaintiffs to the inadequacy of the price and the fact that the sale was made by Valens without order of court, on hearing, plaintiffs, after conference with their counsel, decided to withdraw these objections.

It thus appears that the subject matter of these accounts, which is the principal issue in controversy, was definitely disposed of in the probate and circuit courts by the entry of an order adjudicating Valens to have been negligent and fixing upon him and his surety the liability for his failure to collect the accounts. Those who were plaintiffs in that proceeding and who filed their objections to the final account of Valens, which was heard and adjudicated in the probate court, were the same parties who waived notice of

the closing of the estate by Laurie and consented to the closing of the estate, and the orders entered on Laurie's petition, which are hereinbefore set forth, again adjudicated any objections which plaintiffs might have had to the closing of the estate, by declaring the estate insolvent, discharging Laurie as administrator *de bonis non,* and approving his accounts.

Plaintiffs' counsel argues that these orders and judgments of the probate and circuit courts are not *res judicata* because, as he says, Laurie's petition to close the estate is not a final account but only a petition asking the court to declare the estate insolvent and for the discharge of the administrator. This contention is untenable. It is apparent that the controversy is founded upon the failure of Laurie to require Valens, his predecessor, either by suit or otherwise, to pay the accounts which could have been collected by Valens before the statute of limitations became effective, and the charges of the complaint are principally to the effect that Laurie failed in his duty in this behalf, and neglected and refused to discharge the obligations imposed upon him by his appointment. We are satisfied from an examination of the record that these charges are untenable, but aside from that circumstance it is equally clear that it would have been unavailing for Laurie to sue on these accounts after the probate court had heard and determined their status and declared them uncollectible, by reason of the negligence and dereliction of Valens. In view of this adjudication by the probate and circuit courts, we think the doctrine of *res judicata* is applicable, and that plaintiffs are estopped from maintaining their cause of action against the defendant as surety on Laurie's bond. Citations supporting this conclusion are contained in the former opinion *People ex rel. De-Cola v. United States Fidelity & Guaranty Co.,* 306 Ill. App. 518. One of the cases cited therein, *Little v. Blue Goose Motor Coach Co.,* 346 Ill. 266, holds it to

be the established rule of law that a prior judgment is a bar to a subsequent suit, even if the issues and the relief sought were not identical, where a material fact in litigation has been determined. The material fact in litigation in this proceeding is the finding that these accounts could not be collected because of the negligence and derelictions of Valens; and the adjudication of that material fact through the various orders heretofore entered in this estate, and litigated in several courts, constitutes a bar to recovery in this proceeding.

It would serve no useful purpose to remand the cause for a new trial because it is obvious that plaintiffs are precluded from recovery. Therefore, the judgment of the superior court is reversed and judgment for costs will be entered here in favor of defendant.

*Judgment reversed and judgment here in favor of defendant.*

SCANLAN, P. J., and SULLIVAN, J., concur.